Good morning, Your Honors. May it please the Court, my name is Mark Payne. I represent the appellant Eastwood Insurance Services. The District Court's award, the fee award in this case, rests on the construction of two fee-shifting statutes, one under federal law, one under state law. Neither is broad enough to support the weight of the $2 million fee award. Neither justifies such a dramatic departure from the way these fees are always paid in settlement of wage and hour class actions. Three basic reasons. This case was settled both as to the Fair Labor Standards Act claim and the 17200 claim, right? So the claim really was under both statutes and both were settled? Yes. Actually, the settlement encompassed not only those two claims, those were the only claims of the case, Your Honor. It also encompassed all other wage-related claims, including, I think it's very important to note, a separately pending wage and hour class action under state law, the Smith action, which the plaintiff's counsel in this case filed in 2004 after the District Court had rejected the attempt at an end run around the FLSA opt-in procedures. In essence, the case went from, it started off as seeking representation on behalf of 1200 sales agents. By the end of the case, the District Court had gutted that and reduced the class size to the 157 sales agents who had properly opted in under the FLSA. Now, although the case and the complaint that was filed by the plaintiffs in this case asserted two claims, the primary focus of the case was the FLSA action and the unfair competition law, the UCL claim, under Business Impressions Code 17200, was premised solely upon the alleged violation of the FLSA, which is what led the District Court finally to reject the main reason for the UCL claim, which was to encompass not just the opt-ins, but the wider class, the 1200 other sales employees. So the reason that the District Court's fee award really cannot rest upon these statutes is that the case settled. The plaintiffs compromised their claims short of a judgment. So if the precise words chosen by Congress in the FLSA statute are given effect, this settlement precludes a fee award because there was no judgment. The provision under the FLSA requires that a fee award, it limits a fee award to those cases in addition to any judgment awarded to the plaintiffs. But if there is a settlement also under the state law, the state doesn't have, state law doesn't have that requirement, correct? The state law, meaning the 102, Section 1021.5 of the CCP, does not, is not, sorry? 1025.1. No, maybe it is. It is 1021.5, Your Honor. You're right. That section of California law does not have the requirement of a judgment. That's correct, Your Honor. It does have significant requirements that were not met here, one of which is that and then there are three elements of the statute, none of which were addressed by the plaintiffs in their fee application to the district court. They weren't addressed at all. It's like, and then the district court analysis talked about a catalyst theory, but the elements of 1021 never addressed by anyone. It's like nobody read the statute. I mean, this is, yeah, here's kind of what's troubling me. It's kind of a catch-22. Normally, you've now made this argument that prong two of the statute, which is sort of a more factual predicate of whether or not the statute applies, wasn't really invoked by the district court. They've made the argument, well, that really wasn't argued by you below. You were focusing on something else. So now we're here. And it seems to me that there's one of two possibilities on that. Maybe there's more and you can tell me. One is that as to the specifics of what the district court might have focused on, had it been brought to its attention, that you waived that because you didn't claim that as a basis for not invoking the state law. That's one option. The other option is, well, it wasn't waived, but in any event, it wasn't considered, so it would have to go back so the district court could consider it. I don't know if there's more options, but maybe you could address at least those two. Thank you, Honor. Our position is that it was the plaintiff's burden in the fee application in the first place. At the district court level, if they're going to ask for fees under 1021.5, then show the court why it is that they've met each of the three statutory elements set forth in 1021.5. Zero discussion about those issues. None. So that's why Eastwood, in turn, never responds. Or what are they supposed to respond to? The arguments just weren't made under 1021.5. So our position is that Eastwood didn't waive anything. If anybody waived anything with respect to 1021.5, it was the plaintiffs when they made their fee application. Highly unusual to see a ‑‑ I mean, unprecedented, as far as I know, to see 1021.5 being used as a basis to award fees to the class counsel in the settlement of a wage and hour class action, or even in the judgment in favor of plaintiffs in a wage and hour class action. The reason that that's unprecedented, the reason that there's not a single case that the plaintiffs can cite to this court where any court has ever awarded attorney's fees under 1021.5, is because the statutes that the plaintiffs bring these suits under, all of them have fee shifting provisions. All of them do. And so as the California Supreme Court commented in the Graham case that's cited in the papers, there is some mechanism authorizing a fee award which makes 1021.5 inapplicable and unnecessary. Here, FLSA section 216B has a fee shifting provision. So that's why the analysis really should have been focused on that section, whether plaintiffs prevailed in the sense that Congress described prevailing. Kennedy. Is the only basis in this case for the 17200 claim the public policy set forth in the FLSA? Yes, I think the court's question, Judge White, is it was the plaintiff's only basis for asserting the 17200 claim, the alleged violation of FLSA. Right. The answer to that question is yes. So the only two claims in this case were the FLSA and 17200 predicated on the FLSA. That's correct, Your Honor. So therefore, your position would be the only attorney's fee provision that could be applicable is the FLSA attorney's fee provision. Actually, statutorily, yes, that's correct. There is another legal doctrine and contractual doctrine that's available to the plaintiffs here. The plaintiffs at the inception of the case had retainer agreements with their counsel, as in all of these cases, and those retainer agreements provided that the plaintiff's counsel would share in whatever recovery, by settlement or judgment or whatever, as a percentage of the settlement amount, which is known as the common fund. So by virtue of those retainer agreements, and by virtue of the equitable common fund doctrine that courts have recognized, the plaintiff's counsel would recover a percentage. And in the Ninth Circuit, that percentage benchmark is 25 percent. Vis-à-vis you, the only basis would be under the FLSA. That's correct. Unless they somehow, unless they had an agreement with us, which they didn't have in the context of this settlement, that's correct, Your Honor. The FLSA is the only statutory way. It's the statutory. So, I mean, there's a difference between getting a percentage out of your recovery and then getting statutory fees, obviously. Yes, there is. A big money difference is what it boils down to. And that's what's so interesting about this case. Okay. So if we move off of the state issue and then you get to a legal issue, do you not, before you get to calculation of fees and whether maybe that was done incorrectly, but the legal issue you raise is that you need a judgment, correct? Under the FLSA. You don't have a judgment here, in your view. With respect to that, did you argue in the district court that you needed a judgment or was the argument there over what's a prevailing party? Yes. I would refer the court to the briefing that Eastwood gave to the district court. I think it's referenced at the supplemental excerpts of record at pages 470, specifically lines 16 to 17, and page 472, lines 14 to 18. I think in the briefs, which I remember being at pages 59 and 61 of the briefs below, Eastwood argued specifically that there was a distinction in the statute between a judgment and a prevailing party standard. Could it have been argued more fully? Of course. But that's what we've done here for this court on appeal. The other, I know the Fifth Circuit has taken the position that it's a prevailing party standard, is that correct? It appears that the Fifth Circuit has without any discussion, really, of this precise issue. I mean, there's passing reference in a lot of cases, not just in the Fifth Circuit, where the passing reference is that we rely on our prevailing party jurisprudence in determining that fee awards are appropriate here. And is there any circuit that says, that adopts your position? The Seventh Circuit in the Stomper case, Your Honor, specifically addressed the very similar, nearly identical statutory language in the context of the Labor Management Reporting Act and the LMRDA. And the only difference in the statutory language there was the use of the word may award instead of shall award. But there, after the analysis, and that being the only court that we know of that has ---- But nobody's done it under the FSOA. That's correct. Okay. That's correct. Not that we know of. All the courts have just simply glossed over this distinction. It doesn't appear that anyone's ever raised this argument, at least not to the extent that it's resulted in any published decisions. When the statute says, in addition to any judgment awarded to the plaintiff, does that mean that there has to be a judgment? Or couldn't you just read that as saying that if there is a judgment, attorney's fees would be in addition to it, but it doesn't mean that there's no judgment that there can't be attorney's fees? And that appears, Judge White, to be what the district court, how the district court reasoned to its conclusion. But to do so is to literally read out of the statute the language that says, in addition to any judgment. Because without that language, you know, there's nothing that says prevailing party. There's nothing even that says it goes to the plaintiff. It says a judgment awarded to the plaintiff. It's not just any judgment, not a judgment of dismissal, but a judgment awarded to the plaintiff. We would be rewriting, and this Court would be rewriting the statute if it were to hold that the statute can also be interpreted more broadly to encompass in addition to any recovery by the plaintiffs or in addition to any settlement by the plaintiffs. Congress could have said such things, but it didn't do that. I was looking up the cite to the Keytronic case decided by the United States Supreme Court, in which the court said the efficacy of an exception to the American rule is a policy decision that must be made by Congress, not the courts. The desirability of a fee-shifting provision cannot substitute for the express authorization mandated by the Supreme Court. And that therein is, to me, that's the umbrella under which the interpretation has to take place. We live by the American rule. The American rule says the parties bear their own fees, and if we're going to accept from the American rule those exceptions, then we must narrowly construe the statutes to give to observe the American rule. You indicated that you had found no case that awarded attorney's fees under 1021.5 in a wage and hour case, correct? That's correct, Your Honor. In fact, I found any case that says you can't do it. Yes. You just anticipated my, yes, my next statement, that in the Kistler case, it's reported at 15 Calap 4th, 1326. It's a 1993 court of appeals case in California. I think it's cited at page 21 of our opening brief. It squarely addressed this argument. It reversed a fee award because 1021, it concluded, was inapplicable. In that case, that was three plaintiffs. Their wage claims involved vacation claims that were, I think, $9,000, $10,000, and $12,000 each, something like that. And in recognition of the fact that, you know, these were claims that were in their personal interest, they had plenty of incentive to pursue those claims, 1021. It really turned on the facts of those cases that they didn't meet the number two standard, probably. Yeah. Well, I think it actually probably turned on all of the standards in 1021.5, the most essential being that there really wasn't a need for 1021.5 because these people had their own personal pecuniary interests. I guess that doesn't tell us that fees couldn't be awarded under that. Just simply in that case, they didn't meet the standards. It's certainly true that in that case, that's what the court's holding was. I can't conceive of a case. I'm not sure that has too much bearing on what we do here. I simply can't conceive of a case where 1021.5 makes any sense in the context of these wage and hour class actions. These are literally a multibillion-dollar industry now per year. That kind of money changing hands from employers to employees, the incentive is there for the employees. The incentive is there for the plaintiff's counsel to bring these claims. They're bringing them, and they've brought them all without reliance on 1021.5. I guess that still doesn't really answer the question of why they couldn't invoke that statute. Because as the California Supreme Court in the Graham case observed, there is some mechanism authorizing fee awards. Therefore, 1021.5 doesn't come into play. The mechanism authorizing fee awards is by statute, in this case, FLSA. In California wage cases, Labor Code 218.5 is one example. There are many, Labor Code 1194. But you're telling us because there was no judgment that there is no mechanism in this case. That's right. The plaintiffs had a mechanism at the beginning of the case, Judge Fletcher. That's what they knew, and they bargained for with their counsel. The mechanism at the beginning of this case was FLSA 216B, stated in the complaint. The other mechanism was the common fund recovery that they contracted for and that the plaintiff's counsel knew he would have the benefit of, by virtue of the equitable common fund doctrine that's recognized every day in the California courts and in all these settlements. You look at all the settlements that the plaintiff's counsel submitted to the court, to the district court in its declarations. All of those settlements are a percentage of the common fund recovery. None of them is based on FLSA judgment in a settlement context. Are you, in essence, arguing there's some preemption issue here? Because of the way that 1021.5 is written and the way the California Supreme Court has interpreted it, we're arguing that it does not apply here. It does not apply because there are so many mechanisms available for the recovery of attorney's fees in these cases. So let me just see if I understand, though, because there's no judgment in your view. Had they turned the settlement into a judgment, then they would be entitled to fees under the statute. Is that correct?  That isn't – perhaps that could happen, where you take the settlement and it becomes incorporated into a judgment that the court enters. All right. Now, in this case, the party specifically bargained for an agreement that there would be no judgment in this case. They executed a stipulation that said there won't be any judgment entered as long as Eastwood pays the money it agreed to pay to the class members. There won't be. And so as a result, there is no judgment entered in this case. And there can't be. Is the settlement agreement silent as to attorney's fees? The settlement agreement simply provides that the attorney's fees will be submitted separately, that the agreement itself does not address one way or the other. The parties had no agreement about what those fees would be. It was expressly left open. Yes, it was. It was left open in the sense that it was acknowledged that the plaintiff's counsel was going to petition for fees. There's a very weird provision in the release section which says that the attorney's fees have been settled out and there will be no claim. How did that happen? You know, Judge Fletcher, I'm not sure I can answer that. I wasn't there on the scene. I came into this relatively late. I'm sure you've read that and wondered about it. Yes, and my understanding is that that provision, and this is just my understanding from reading what the plaintiff's counsel has said it is. I have no idea what the defendant actually intended in that provision. But it was simply to cover the bases if the plaintiffs, the opt-in plaintiffs, were to make some claim against somebody because the class counsel had to go back to them and ask them for a portion of their recovery to compensate him for his work in this case. That, again, was the agreement that he had with the opt-in plaintiffs. So that was there to protect, as I understand it, to protect him. Okay. Thank you. Thank you, Your Honors. Good morning, Your Honors. David Borgen for the plaintiffs. I'm here with Mr. Desai, Ashish Desai, who is the real party in interest because the plaintiffs got paid in this case. They have a waging hour of recovery. And now after five and a half years of work on this case, we've got the plaintiffs Mr. Desai is still waiting for penny one for his hard and excellent work on this case. The fundamental objective of the California state law, the private attorney general provision, the doctrine there that's embodied in Section 1021.5, is to encourage suits just like this, suits that enforce public policies like the right for the workers to get their wages. And they do that by providing substantial attorney's fees to successful litigants in such cases. That's California state law. It's in the Graham case. That's the California Supreme Court from 2005. Do you agree that the claims in this case were one under the FLSA and the other was a 17200 claim based on the policy set forth in the FLSA? The original lawsuit, Your Honors, brought the case under the Fair Labor Standards Act, the federal law, as well as under Section 17200 of the state law, the unfair competition law. The settlement resolved all the federal and state law claims. The district court found that there was a fee entitlement under both federal and under state law. What was the policy on which the 17200 claim was based? The 17200 claim is based, Your Honor, on the fact that some employers should not have an unfair advantage over others by denying their workers their statutory overtime. In this case, it was statutory overtime that was due to them under the Fair Labor Standards Act. And that is a basis of which a 17200 claim can be based. Is it coextensive with the FSLA claim or is it different? You know, not 100 percent, Your Honor. Generally speaking, the state labor code is more protective of workers' wages than the federal Fair Labor Standards Act. But in some cases, the federal law provides more wage protection than state law. But state policy is that workers should be paid their statutorily protected wages, whether provided under state or federal law. What about the fact that under 1021.5, there's three parts to it and there's nothing in the record to support findings as to necessity and financial burden, which is required by the statute? Well, we spelled out, Your Honor, that we believe the defendant in this case has waived that argument. The fact of the matter is it was quite clear that the fee application was going to be brought under both 1021.5 and under the federal statute. Who bears the burden in establishing entitlement to attorney's fees? Well, the plaintiff has to make a showing to the court. The court had an ample opportunity to review it. The defendant … But we don't even have any findings as to this, correct? Well, the court made findings, Your Honor, based on what was presented to it. The only challenge, once Mr. Desai presented his fee petition in application to the federal court, the challenge was you're not entitled to it. You waived it under your settlement agreement, which the court rejected. The other challenge was you don't get it under the Fair Labor Standards Act because you don't have a judgment. The court rejected that. And you don't get it because you're not entitled to any catalyst fees under Graham. And the court did a very careful analysis of every complaint that the defendant raised, particularly Graham, and found that under Graham, because it was a meritorious claim, because it had made a change, and because it was necessity, because the claim had been presented to the defendant and to the state agency, that 1021-point fees were available under the catalyst theory. It's quite clear. It's kind of like the nose on your face, Your Honors, and are you going to deprive Mr. Desai of fees when a case like this is so self-evidently meeting all the other tests. You have an important public policy, the right to workers to wages. You have a large class. You have 157 people who directly benefited from the settlement and got on average $7,000 each. And then you had this whole other class of 1,200 people that were impacted on a catalyst basis when the employer, after Mr. Desai established on partial summary judgment that the exemption on defense didn't apply, the employer changed the policy and started paying those people overtime. It's undisputed on this record that that was a $12.7 million benefit to the class. Mr. Desai didn't represent those people at that point in the litigation. He had no retainers with those people. They benefited from all of that. There was no way that the four individual plaintiffs that Mr. Desai represented at the outset of the litigation could afford to litigate on behalf of these 1,200 people. They had claims worth on average $7,000. If they were successful, you have to discount on the Beasley and all the state wage and hour claims. So when you compare the burdens on these four individual plaintiffs and the benefits of the public enforcement, it's quite clear that the recovery here is not going to be sufficient to pay for the Lodestar, which was $1.5 million. Even the cost was $50,000, which exceeded the claims of the four individuals that Mr. Desai represented. So you clearly meet the financial burden test, whether it was litigated at the outset at the fee petition or not. Ginsburg. Counsel, did Eastwood, before the district court, ever contend that you didn't meet the three standards under the state statute? Did they argue that? I don't believe they did, Your Honor. Their sole argument under 1021.5, well, first of all, they said we waived it in the settlement agreement, which the Judge Taylor, who's now retired, found that they didn't. And second of all, they claimed that we weren't entitled to it under the catalyst theory, because Buckhannon applied or because Graham didn't apply. And that was all the judge considered. And that's what the judge, you know, the judge heard the arguments that they made and had plenty of opportunity to make all their complaints. And the judge rejected them. So this is a new argument being raised on appeal. We've addressed it in our papers here. Judge Taylor at California State. Can I follow up on that for a second, though? If to prove fees, you have to prove three things under 1021.5, and you only prove one, and the defense is silent as to the other two, does that mean the defense has waived those? Well, I think so. It's the only way of an affirmative type of burden. The case was presented as a 1021.5 fee presentation on a class action basis, that these rights had been vindicated. The defendant had the opportunity to raise all of the prongs that it wished to. It only argued the one. The court found that the 1021.5 did apply. It didn't make specific findings, Your Honor, as to the three tests. But to go back now, first of all, the problem is to go back now, it's asking Judge Taylor to make findings that weren't presented to him. And second of all, he's no longer there to make those findings because he has retired. And the California Supreme Court says that the best judge at a value of the legal services is the prior effect, the judge who saw the services in his or her district court, and that on appeal, we're not supposed to be looking for faults that the judge made or maybe he or she could have done something better. The district judge, the abuse of discretion standard, the findings of the judge, the award that the judge makes to encourage this kind of public interest litigation, it's not to be overturned, Your Honor, unless it's, quote, clearly wrong. That's the test. I'm trying to get more at the basic legal principle. If the burden of proof is on the plaintiff to prove three things, the plaintiff only proves one. The defendant doesn't address the two that the plaintiff didn't prove. Has the defendant waived that? We believe they have. And the judge looked at it. And the judge said he had an independent responsibility to review the fee petition, all the arguments that were presented to him, and found that we had a ---- he knew the case backwards and forwards. He'd been living with it for several years. It was a hotly litigated case. He was clearly in a position to judge whether the 1021.5 standards were met, Your Honor. So what we're looking for now is that at this time the judge made the findings. He carefully considered all of the Lodestar on the Lodestar enhancement test, which is California state law, awarded a modest multiplier of 1.4. And the only complaint that we heard from the defendant as to the multiplier was on the federal law. This clearly mates all the state law tests for a modest multiplier here under novelty and complexity, preclusion and risk. These are all valid state law factors. We have conceded that the cost should not have been multiplied, and so we're seeking affirmance of the $2,060,278.20 plus fees and costs on appeal. That's on footnote 32 of our brief. Well, if we were to get into the details of the fee award, where is there any evidence that Sessions was precluded from taking other employment? Well, it wasn't a question, I don't believe, Your Honor, of Sessions. The fact of the matter was it was Mr. Desai that was the primary attorney for the plaintiffs throughout this litigation. And Judge Taylor saw Mr. Desai in and out of his courtroom over a multiple-year period, arguing multiple summary judgment motions, arguing the notice motion, arguing communication issues that led to a published decision. The judge was able to assess, based on all of the hoops. Okay. I don't think maybe I need to just make my question more precise. I'm not asking as to Mr. Desai. I'm asking as to Sessions. Mr. Sessions, my understanding, Your Honor, is that Mr. Sessions worked on the case at the very outset, helped work up the original complaint, and then turned it over to Mr. Desai and his firm to litigate. So I don't think there are any findings with regard to preclusion as to the small amount of time that Mr. Sessions was involved in the case. So I think, you know, the question was, could Mr. Desai recover on the retainers? The real beneficiary of this litigation are these 1,200 absent class members who had effective relief on a catalyst basis. Mr. Desai has no retainers with those folks, no ability to collect anything from them on a case on that matter, says that the availability of a common fund as a source does not preclude a 1021.5 award. And neither does they've cited no authority that other fee statutes, fee-shifting statutes precludes a 1021.5. We gave you in our 28F letter a decision from Judge Henderson of the Northern District Court in Cole, where even though there were other fee-shifting statutes, he didn't need to reach them in order to award a 1021.5 fee award. The only case that Mr. Payne has hung his hat on is this Kistler case. And we can see that any number of individual cases, Kistler, Austin, Flannery, Weeks, all of those cases, 1021.5 fees were rejected. Why were they rejected in those cases, Your Honors? Because the only claims brought in those cases were individual claims, claims for sex discrimination damages or wage and hour claims for those individuals. Mr. Desai's clients never brought these claims solely for themselves. From the outset, they were seeking class relief and collective action relief for everyone who was similarly situated. And because of this public benefit, that's what distinguishes our case from a case like Mr. Kistler. In our experience, and I've been doing these cases, Your Honors, for decades and more, 1021.5 is always a fee basis for the award of fees for the plaintiff's counsel in these wage and hour cases. I'm sure Judge White has seen that as well, the cases that get removed up to his court or are there on diversity jurisdiction. This is not the case. Kagan. If we were to disagree with you on the 1021.5 basis, why wouldn't we, as a matter of statutory interpretation, follow the Seventh Circuit's logic of requiring a judgment in rejecting Judge Cudahy's dissent in that case of saying that's form over substance? We focused, Your Honor, on the state law relief, because that's really where the load started, and clearly the multiplier, the enhancement, the extra 40 percent comes. We believe that as to the 216B argument, the FLSA argument, first of all, we don't think you need to reach it. I guess under your hypothetical and you were to reject our state law analysis, then you'd have to reach it. We'd want some fee award, clearly, for the hard work that Mr. Desai had done. First of all, there's no authority under the FLSA, no authority to support that. Every court that's looked at it, including the major treatise on it, discusses prevailing plaintiff or prevailing party fee shifting. The idea of putting an additional burden on a plaintiff to prove something else on a prevailing plaintiff statute, which is more liberal than just a prevailing party statute like the Title VII, seems illogical and contradictory. But I don't think you need to reach this. And then you had the other case in the Seventh Circuit, which on the FLSA simply ignored Stomper and said, well, it doesn't seem to apply. It's a prevailing party basis for the FLSA. So even in the Seventh Circuit, Stomper doesn't appear to be the law. But even putting aside all of that, if you look at the statute and give it a literal reading, which is what Ms. DuPain and Eastwood are urging on you, it says in addition to, quote, any judgment, any judgment. It doesn't say a Rule 54 judgment. It doesn't say a final judgment. We have any number of judgments in this case that would satisfy the strictest 216B test, Your Honors. We have the critical ruling on the Rule 56 motion for partial summary judgment on the VII-I exemption. Once Mr. Desai won that, there was no excuse for not paying people overtime. The only question was damages. He was the prevailing party under the judgment test and was entitled to fees, as in Horan, which is a case that's been cited to you, as in Clements, which is a case that was in my 28J letter. In addition, we had the any number of other partial summary judgments, which would also support any judgment test on a whole slew of damages issues, such as the prepaid overtime and the liquidated damages. But then you get down to the settlement agreement itself, which required, as much as Eastwood wants to say, oh, well, the judge didn't have to do anything, the settlement required the judge to make rulings as to the allocation of this $1.2 million that had been allocated, individual allocations to the 157 persons. And Judge Taylor pursued that, gave notice to all of the 157 individuals, invited them to his courtroom, held a hearing, approved those individual awards, damage awards, and then issued an order on that. And that order itself was appealable by any one of those individuals if they had objected to it, and that constitutes a judgment by any common-sense purpose, certainly under the liberal interpretation test, because the FLSA, just like 1021.5 jurisprudence, encourages a fee award so that people like Mr. Desai will bring these cases to protect workers' rights to get their fair wages. Let me ask another question on the specific fees that were awarded. It actually has to do with the costs. It strikes me as odd that you apply LODESTAR to costs, because if you look at the whole history of why you apply a LODESTAR and the kind of factors you look at, it doesn't have anything to do with how much your deposition transcript costs or your filing fee and things like that. So I'm somewhat at a loss to understand why there would be a multiplier enhancement there. Right. And I think we concede, Your Honor, and that's on this footnote 32 in our appellate brief, the brief to you all on page 42 of our brief to the Ninth Circuit, we concede that it was probably an oversight to multiply the costs. But that's something that can be recomputed, rather than remanding it to a judge who's strange to the case anyway. Judge Stotler, who is now overseeing this case, had nothing to do with this case at any stage of the proceeding. So we've recomputed that in that figure, the $2,060,278.20. That includes taking out the multiplier on costs. We're not arguing that here. We do believe that the fees on fees multiplier is appropriate under Graham. Under state law. Under state law, because, first of all, it says that you can get a multiplier on fees on fees litigation. But particularly here, where the fees on fees litigation has been so contentious, so vexatious, so much additional delay, and where the underlying risk, contingent risk, which is the basis of this modest 1.4 multiplier, is the same. The defendant has never conceded any entitlement to fees. So it's not like the typical fees litigation where you're just arguing about how much. Thank you. Thank you, Your Honor. I think we've got probably a minute for rebuttal. We've gone over time, I think, a little bit. That's fine. I'm sure you might. I mean, I don't know if we have any more questions. But you might want to respond to something specific that he said. Thank you. I appreciate that. Just two points as quickly as possible. It sounded to me like counsel was distinguishing the Kistler cases and their like on the basis that those cases involved claims of individuals. And that's why 1021.5 was deemed not applicable. And I would say that's exactly why those cases are not distinguishable from this case. This case ended up involving only the individual claims of the 157 who opted in. That's what the case ended up being about. That's what the settlement was for. It's true that the plaintiffs first filed this case on behalf of 1200, but the district court rejected that. And literally gutted the class. So there was no relief. The 1200, there were no beneficiaries in this group of 1200. In fact, the Plaintiffs' Council went to state court and asserted an entire new class action lawsuit under state law on behalf of those people that did not join in to this case. With respect to the judgment issue under FLSA, the point, I think, was discussed about the judge's or the district court's early ruling that the retail and service establishment exemption did not apply in this case on a motion for partial summary adjudication. Why is it that that is not a judgment under 16b? The reason is, is that it didn't result in any finding of liability. It was simply a ruling on an affirmative defense, and there was never any judgment that Eastwood had actually violated the statute, that it actually failed to pay overtime to any one of these 157. Not one of these 157 ever proved that they worked overtime or that they weren't paid for the hours that they worked. Why didn't that happen? Because they threw in the towel, they fought to a draw, both sides were bloodied in the battle, some plaintiffs won some battles, Eastwood won some battles. At the end of the day, they settled the case, and there was no judgment. Thank you. Thank you. Thank you both for your arguments this morning. The case of Parks v. Eastwood is now submitted.
judges: B. Fletcher, McKeown, Whyte